## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

MATTHEW MACHION, Individually and On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

DIGITALGLOBE, INC.,
MACDONALD, DETTWILER AND ASSOCIATES LTD.,
GENERAL HOWELL M. ESTES, III,
JEFFREY R. TARR,
NICK S. CYPRUS,
ROXANNE DECYK,
LAWRENCE A. HOUGH,
WARREN C. JENSON,
L. ROGER MASON, JR.,
KIMBERLY TILL and
EDDY ZERVIGON,

      Defendants.

---

## PLAINTIFF'S CLASS ACTION COMPLAINT

---

Plaintiff Matthew Machion ("plaintiff"), individually and on behalf of all others similarly situated, by the undersigned counsel, respectfully brings this class action for violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, against the herein named defendants and alleges the following:

## SUMMARY OF THE ACTION

1.      This is a stockholder class action brought on behalf of the holders of DigitalGlobe, Inc. ("DigitalGlobe" or the "Company") common stock against DigitalGlobe, its Board of Directors (the "Board"), and MacDonald, Dettwiler and Associates Ltd. ("MDA") for violations of federal law arising out of the proposed sale of the Company to MDA and its affiliates (the "Proposed Acquisition") without disclosing all material information concerning the Proposed Acquisition to DigitalGlobe stockholders.  This matter arises under §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

2.      On February 24, 2017, DigitalGlobe and MDA announced they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which MDA would acquire DigitalGlobe for just $35 per DigitalGlobe share.  The merger consideration consists of $17.50 in cash and $17.50 in MDA stock.  The Proposed Acquisition significantly undervalues DigitalGlobe.

3.      Conflicted members of DigitalGlobe management and the Board drove the sales process, each of whom will receive special benefits not shared by DigitalGlobe stockholders if the Proposed Acquisition closes.  The Board also heavily incentivized the Company's financial advisors, PJT Partners LP ("PJT") and Barclays Capital Inc. ("Barclays"), to consummate the Proposed

Acquisition by making a substantial portion of each advisor's fee contingent on the closing of the merger.

4.      To encourage and obtain stockholder support for the Proposed Acquisition, defendants filed a series of materially false and misleading documents with the SEC. On April 27, 2017, defendants filed and disseminated to stockholders a materially false and misleading Form F-4 Registration Statement; on June 2, 2017, defendants filed and disseminated to stockholders a materially false and misleading Amendment No. 1 to Form F-4 Registration Statement; and, on June 22, 2017, defendants filed and disseminated to stockholders a materially false and misleading Prospectus of MDA (collectively referred to as the "Registration Statement"). Also on June 22, 2017, defendants filed and disseminated to stockholders a materially false and misleading Schedule 14A Proxy Statement (the "Proxy Statement").

5.      The Registration Statement and the Proxy Statement, both of which recommend that DigitalGlobe stockholders vote in favor of the Proposed Acquisition, omit and/or misrepresent material information about DigitalGlobe's and MDA's intrinsic value. Specifically, the Registration Statement and the Proxy Statement omit, *inter alia*, the following material information: (i) the individual multiples for each of the companies used in PJT's and Barclays' comparable companies analyses; (ii) the individual multiples for each of the companies used in Barclays' *Selected Precedent Transaction Analysis*; (iii) several key values from the projections created by DigitalGlobe management for fiscal years 2017-2021 that were provided to MDA and relied on by PJT and Barclays to generate their fairness analyses; and (iv) several key values from both MDA's financial projections for fiscal years 2017-2021 and DigitalGlobe's revised MDA financial projections for fiscal years 2017-2021, which were relied on by PJT and Barclays to generate their

fairness analyses.  These omissions render several sections of the Registration Statement and the Proxy Statement false and/or misleading in violation of §14(a) of the 1934 Act.  Certain defendants also violated §20(a) of the 1934 Act, as these defendants had the ability to exercise control over and did control a person or persons who violated §14(a) of the 1934 Act and/or SEC Rule 14a-9 by their acts and omissions as alleged herein.

6.    The information defendants omitted from the Registration Statement and the Proxy Statement is material to DigitalGlobe stockholders' decision of whether to vote in favor of the Proposed Acquisition.  As such, defendants' violations of §§14(a) and 20(a) of the 1934 Act threaten stockholders with imminent harm.  Plaintiff therefore seeks injunctive relief to ensure that defendants cure their violations of §§14(a) and 20(a) of the 1934 Act and provide DigitalGlobe stockholders with all material information about the Company's and MDA's intrinsic value prior to their vote on the Proposed Acquisition, which is currently scheduled for July 27, 2017.  In the alternative, if the Proposed Acquisition closes and/or injunctive relief is not feasible, plaintiff seeks monetary damages.

7.    In sum, by agreeing to the Proposed Acquisition, each of the defendants has violated the federal securities laws.  Rather than acting in the best interests of the Company's stockholders, defendants entered into the Proposed Acquisition to aggrandize their personal interests.  To ensure stockholder consent of the unfair merger consideration, defendants filed and disseminated the Registration Statement and the Proxy Statement, both of which are materially false and misleading. As a result of the omissions and misstatements in these documents, stockholders will not be able to cast an informed vote on the Proposed Acquisition.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the claims asserted herein pursuant to §27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

9.      This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and/or maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and DigitalGlobe's headquarters are located at 1300 West 120th Avenue, Westminster, Colorado 80234.

## PARTIES

11.      Plaintiff Matthew Machion is and at all times relevant hereto has been a stockholder of DigitalGlobe.

12.      Defendant DigitalGlobe is a corporation organized and existing under the laws of Delaware and is headquartered in Westminster, Colorado.  DigitalGlobe's common stock is traded on the New York Stock Exchange under the ticker symbol "DGI."

13.      Defendant MDA is a corporation organized and existing under the laws of British Columbia, Canada.  MDA's common stock is currently traded on the Toronto Stock Exchange under the ticker symbol "MDA."

14.      Defendant General Howell M. Estes, III ("Estes") is and at all times relevant hereto has been a director and Chairman of the Board of DigitalGlobe.

- 4 -

15.     Defendant Jeffrey R. Tarr ("Tarr") is and at all times relevant hereto has been a director of DigitalGlobe and has served as the Company's CEO and President since 2011.

16.     Defendant Nick S. Cyprus ("Cyprus") is and at all times relevant hereto has been a director of DigitalGlobe.

17.     Defendant Roxanne Decyk ("Decyk") is and at all times relevant hereto has been a director of DigitalGlobe.

18.     Defendant Lawrence A. Hough ("Hough") is and at all times relevant hereto has been a director of DigitalGlobe.

19.     Defendant Warren C. Jenson ("Jenson") is and at all times relevant hereto has been a director of DigitalGlobe.

20.     Defendant L. Roger Mason, Jr. ("Mason") is and at all times relevant hereto has been a director of DigitalGlobe.

21.     Defendant Kimberly Till ("Till") is and at all times relevant hereto has been a director of DigitalGlobe.

22.     Defendant Eddy Zervigon ("Zervigon") is and at all times relevant hereto has been a director of DigitalGlobe.

23.     The defendants named in ¶¶14-22 are sometimes collectively referred to herein as the "Individual Defendants."

24.     The parties named in ¶¶12-22 are collectively referred to as the "defendants."

25.     Non-party SSL MDA Holdings, Inc. ("SSL") is a corporation organized and existing under the laws of Delaware and is a wholly-owned subsidiary of MDA.  SSL is a party to the Merger Agreement.

26.    Non-party Merlin Merger Sub, Inc. ("Merlin") is a corporation organized and existing under the laws of Delaware and is a wholly-owned subsidiary of SSL.  Merlin is a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of holders of DigitalGlobe common stock who are being and will be harmed by defendants' actions described herein (the "Class").  Excluded from the Class are defendants and any person, firm, trust, corporation or other entity related to or affiliated with any defendant.

28.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

29.    The Class is so numerous that joinder of all members is impracticable.  The precise number of Class members is unknown to plaintiff at this time, but the names and addresses of the Class members can be ascertained from the books and records of DigitalGlobe.  There are more than 62 million outstanding shares of DigitalGlobe common stock held by hundreds or thousands of individuals and entities scattered throughout the United States.

30.    There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member.  The common questions include:

(a)    whether defendants violated the federal securities laws as alleged in this complaint, including violating and/or participating in a scheme to violate §§14(a) and/or 20(a) of the 1934 Act;

- 6 -

(b)    whether defendants made false or misleading statements in the Registration Statement and/or the Proxy Statement in violation of §14(a) of the 1934 Act; and

(c)    whether plaintiff and the other members of the Class would be irreparably harmed were the Proposed Acquisition consummated.

31.    Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

32.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

33.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the parties opposing the Class.

34.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

35.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Background**

36.    DigitalGlobe is a leading global provider of high-resolution Earth imagery, data and analysis, specializing in defense and security applications.  Sourced from its own advanced satellite

constellation and third-party providers, DigitalGlobe's imagery solutions and other services provide its customers with accurate and mission-critical information about the changing planet and support a wide variety of uses.

37.     MDA is one of Canada's leading commercial satellite companies and has provided commercial and government customers with innovative space systems and solutions for decades. MDA is active in two principal markets: (1) communications, in which MDA offers space-based solutions for cost-efficient global delivery of direct-to-home television, satellite radio, broadband internet and mobile communications; and (2) surveillance and intelligence, in which MDA offers end-to-end solutions to monitor and manage changes and activities worldwide.

**Brief Summary of the Sales Process**

38.     In the fall of 2016, Howard L. Lance, MDA's President and CEO, contacted defendant Tarr to discuss a potential combination of DigitalGlobe and MDA. Shortly thereafter, DigitalGlobe engaged PJT as its financial advisor without contacting any other potential financial advisor.

39.     Over the next several months, PJT contacted five potential strategic acquirers to gauge their interest in a possible business combination with DigitalGlobe. Oddly, PJT did not contact a single financial acquirer despite the fact several financial acquirers had shown interest in entering into a business combination with DigitalGlobe roughly one year earlier. On January 26, 2017, DigitalGlobe engaged Barclays as an additional financial advisor.

40.     Just one day after engaging Barclays, on January 27, 2017, MDA offered to acquire DigitalGlobe for $35.00 per share. The merger consideration consists of $17.50 in cash and $17.50 in MDA shares. Although the acquisition price was essentially agreed to by the end of January

2017, DigitalGlobe and MDA spent roughly the next month negotiating the Merger Agreement and other merger-related issues, including discussing, on multiple occasions, the treatment of DigitalGlobe equity awards, retention bonuses for certain DigitalGlobe employees, and the makeup of the post-close MDA board of directors.

41.     On February 23, 2017, the boards of both MDA and DigitalGlobe approved the transaction and entered into the Merger Agreement.  Before the markets opened on February 24, 2017, MDA and DigitalGlobe issued a joint press release announcing the Proposed Acquisition. Currently, DigitalGlobe stockholders are scheduled to vote on the Proposed Acquisition on July 27, 2017.

**The Proposed Acquisition**

42.     According to the terms of the Merger Agreement, Merlin will be merged with and into the Company, with Merlin ceasing to exist and the Company surviving as a wholly-owned subsidiary of MDA.  DigitalGlobe stockholders will receive just $35.00 for each outstanding share of DigitalGlobe held, comprised of $17.50 in cash and $17.50 in MDA stock.

43.     In relevant part, the joint press release announcing the Proposed Acquisition stated:

**MDA to Acquire DigitalGlobe, Creating Industry Leader in End-to-End Space Systems, Earth Imagery and Geospatial Solutions**

*Combination to Offer Enhanced, Value-Added Services to Commercial and Government Customers Worldwide*

*Creates Leading Provider of Satellites, Earth Imagery, Geospatial Data Solutions and Analytics*

*Expands Market Access, Increases Scale, and Diversifies Revenue and Customer Base*

*Transaction Expected to be Accretive to Operating Earnings per Share in 2018, Anticipated to Deliver C$75-150M in Run-Rate Synergies by 2019*

- 9 -

*Provides DigitalGlobe Shareowners with Immediate Cash Value and Opportunity to Participate in Upside Potential of Combined Company*

. . . MacDonald, Dettwiler and Associates Ltd. ("MDA") (TSX: MDA), a global communications and information company providing technology solutions to commercial and government organizations worldwide, and DigitalGlobe, Inc. ("DigitalGlobe") (NYSE: DGI), the global leader in Earth imagery and information about our changing planet, today announced they have entered into a definitive merger agreement, pursuant to which MDA will acquire DigitalGlobe for US$35.00 per share in a combination of cash and stock. The transaction values DigitalGlobe at an equity value of approximately C$3.1 billion (US$2.4 billion), and an enterprise value of C$4.7 billion (US$3.6 billion), including assumption of DigitalGlobe's C$1.6 billion (US$1.2 billion) in net debt. The transaction has been unanimously approved by the boards of directors of both companies, and is expected to close in the second half of 2017.

Under the terms of the agreement, each DigitalGlobe common share will be exchanged for US$17.50 in cash and 0.3132 MDA common shares, representing a per share value of US$17.50 based on MDA's unaffected closing share price of C$73.40 on the Toronto Stock Exchange (TSX) on February 16, 2017, the day prior to market speculation about a potential combination, and a C$/US$ exchange ratio of 0.7612. The total cash and stock per share value consideration represents an 18% premium based on DigitalGlobe's unaffected closing stock price on the New York Stock Exchange (NYSE) on February 16, 2017.

The combination will bring together complementary space-related capabilities, creating a stronger company uniquely positioned to capture growth in the U.S., Canadian and global Earth observation and geospatial services markets given its ability to provide complete, end-to-end space systems, earth imagery and geospatial solutions. Together, the combination will leverage a full suite of space-related capabilities, including communications and Earth observation satellites and robotics, ground stations, integrated electro-optical and radar imagery, and advanced data analytics. Additionally, the combined company will lead in cloud-based information services that allow commercial and government customers worldwide to better understand activity across the changing planet.

As part of the transaction, MDA will apply to list its shares on the NYSE in addition to the TSX. Upon completion of the transaction, the combined Company will continue to execute its U.S. Access Plan strategy. This will include further reorganization of all or part of the combined Company's corporate and operating structure to ensure that the ultimate parent of DigitalGlobe is incorporated in the U.S. by the end of 2019, subject to customary approvals. MDA undertook a corporate reorganization in 2016 that included the formation of SSL MDA Holdings, Inc. ("SSL MDA Holdings"), the U.S. Operating Company of MDA, under the guidance

and approval of the U.S. Department of Defense (DoD). SSL MDA Holdings currently operates under a Security Control Agreement (SCA) with DoD, allowing it to pursue and execute U.S. Government programs that require security clearances.

"Today's announcement creates a new company that will lead the industry, offering space systems and imaging solutions from inception to execution, able to make design decisions with our customer's needs in mind," said Howard L. Lance, president and chief executive officer of MDA. "This combination has the scale, resources and technology to serve the large and increasingly complex needs of government and commercial customers globally. By combining MDA and DigitalGlobe, we are significantly expanding our total addressable market by broadening both companies' capabilities and facilitating future growth."

Lance continued, "MDA remains fully committed to its enduring and valued partnership with the Canadian Government and our Canadian employees. This combination offers the opportunity to deliver future economic and job growth in both Canada and the United States, as we focus on driving sustainable revenue expansion from our investments and create value for all our stakeholders."

Lance further stated, "The transaction is a major step forward in our previously announced U.S. Access Plan. We are committed to serving the U.S. Government as a mission-critical partner with an expanded portfolio of end-to-end solutions. DigitalGlobe will operate as a stand-alone division under SSL MDA Holdings, in the same way as SSL and MDA's Canadian businesses."

Jeffrey R. Tarr, president and chief executive officer of DigitalGlobe, said, "Following a thorough review of strategic alternatives, we believe that joining forces with MDA will enable us to deliver more value to our customers, expand opportunities for our team members and maximize value for shareowners. This compelling transaction will deliver immediate cash value to shareowners with further upside through ownership in the combined entity, position DigitalGlobe to reach its next phase of growth and provide greater opportunities for our team members by being part of a larger, more diversified company."

Tarr continued, "Upon completing the transaction, DigitalGlobe will accelerate our vision of being the leading source of information about our changing planet. We look forward to working with the MDA team to ensure a seamless transition and to realize the potential of this exciting combination."

\*       \*       \*

## LEADERSHIP STRUCTURE

Mr. Lance, president and chief executive officer of MDA and president and chief executive officer of SSL MDA Holdings, will lead the combined company. Mr.

- 11 -

Lance's extensive experience in the global aerospace, defense and security markets will help guide and inform the transition and will position the combined company to capture growing demand for end-to-end space systems solutions.

The DigitalGlobe name, brand and headquarters in Westminster will be maintained. **In addition, three of DigitalGlobe's current directors will be appointed** ***to the MDA Board of Directors***. The combined company will have approximately 4,600 employees in the United States and will continue to employ more than 1,800 in Canada.

*    *    *

**ADVISORS**

BofA Merrill Lynch is serving as financial advisor, and Vinson & Elkins LLP and Stikeman Elliott LLP are serving as legal counsel, to MDA. RBC Capital Markets is serving as financial and capital markets advisor to MDA, and BMO Capital Markets provided a fairness opinion. Fully committed financing for the transaction is being provided by Royal Bank of Canada and BofA Merrill Lynch.

PJT Partners and Barclays are serving as financial advisors, and O'Melveny & Myers LLP is serving as legal counsel, to DigitalGlobe. PJT Partners and Barclays provided fairness opinions to DigitalGlobe.

**Disabling Conflicts Infect the Sales Process**

44.     The sales process leading to the Proposed Acquisition was driven by conflicted members of DigitalGlobe management and the Board.  If the Proposed Acquisition closes, Company management will receive more than $39 million in "Golden Parachute Compensation."  Tarr alone will receive approximately $16.6 million.  In addition, if the Proposed Acquisition closes, members of the Board will receive more than $25.5 million in cash and MDA stock for their illiquid DigitalGlobe stock.  Moreover, non-employee members of the Board will receive approximately $5.3 million in cash and MDA stock for their outstanding restricted stock units ("RSUs") and stock options.  Finally, if the Proposed Acquisition closes, defendants Estes, Mason and Cyprus will receive post-acquisition positions on the MDA board of directors, which include membership on at least one committee.

- 12 -

45.    The Board also entered into an engagement agreement with both PJT and Barclays that strongly incentivized each to render a positive fairness opinion and ensure that the Proposed Acquisition closes.  As compensation for its work related to the Proposed Acquisition, PJT was paid $1 million for rendering its fairness opinion, $4 million upon execution of the Merger Agreement, and will be paid approximately $31 million if the Proposed Acquisition closes.  Thus, PJT would have received no compensation had it not rendered a fairness opinion, and will receive approximately 84% of its total fee only if the Proposed Acquisition closes.

46.    For its work related to the Proposed Acquisition, Barclays was paid $1.5 million for rendering its fairness opinion and will be paid an additional $16.5 million if the Proposed Acquisition closes.  Thus, Barclays would have received no compensation had it not rendered a fairness opinion, and will receive approximately 91% of its total fee only if the Proposed Acquisition closes.

**The Registration Statement and the Proxy Statement are False and Misleading**

47.    To encourage and obtain stockholder support for the Proposed Acquisition, defendants filed and disseminated to stockholders the Registration Statement and the Proxy Statement, both of which are false and misleading in violation of §14(a) of the 1934 Act.  The Registration Statement and the Proxy Statement omit and/or misrepresent material information about DigitalGlobe's and MDA's intrinsic value, rendering several sections of each document materially misleading.  Without full and accurate disclosure of this material information, DigitalGlobe stockholders cannot properly analyze the adequacy of the consideration they will receive in the Proposed Acquisition or whether to vote in favor of the Proposed Acquisition.

**The Registration Statement and the Proxy Statement Fail to Disclose the Individual Pricing Multiples for the Companies in PJT's and Barclay's Comparable Companies Analyses**

48.     The Registration Statement and the Proxy Statement omit the individually observed pricing multiples for each of the companies used in PJT's and Barclays' comparable companies analyses. These multiples are material information for DigitalGlobe stockholders and their omission renders several sections of both the Registration Statement and the Proxy Statement materially misleading.

49.     The individually observed pricing multiples for each of the companies relied on by PJT and Barclays in their comparable companies analyses are material. In general, the pricing multiples for commercial satellite companies, such as MDA, tend to be measurably lower than the pricing multiples for satellite companies specializing in defense and security applications, such as DigitalGlobe. By providing the multiples in a completely consolidated manner only, the Registration Statement and the Proxy Statement fail to disclose to DigitalGlobe stockholders the existence and magnitude of this difference. Without being able to observe which pricing multiples apply to consumer satellite companies as opposed to satellite companies specializing in defense and security applications, DigitalGlobe stockholders cannot evaluate whether the pricing multiples ultimately used by PJT and Barclays to value DigitalGlobe and MDA are appropriate.

50.     Moreover, certain companies identified in the comparable companies analyses are naturally more comparable to DigitalGlobe and MDA than others. Thus, it is important that the individual pricing multiples are isolated so that DigitalGlobe stockholders know the pricing multiples for the most comparable companies. Without this information, DigitalGlobe stockholders cannot accurately assess whether the multiples used by PJT and Barclays to value DigitalGlobe and MDA are appropriate.

- 14 -

51.    The omission of the individually observed pricing multiples in the comparable companies analyses renders several sections of both the Registration Statement and the Proxy Statement materially misleading.  For example, this omission renders several portions of PJT's and Barclays' valuation analyses materially misleading, including, *inter alia*: (i) PJT's *Selected Comparable Company Analysis – DigitalGlobe*; (ii) PJT's *Selected Comparable Company Analysis – MDA*; (iii) Barclays' *Selected Comparable Company Analysis – DigitalGlobe*; and (iv) Barclays' *Selected Comparable Company Analysis – MDA*.  In addition, this omission renders conclusions in both the Registration Statement and the Proxy Statement based, at least in part, on the comparable companies analyses materially misleading, including, *inter alia*: (i) PJT's conclusion that the merger consideration is fair; (ii) Barclays' conclusion that the merger consideration is fair; (iii) the Board's conclusion that the Proposed Acquisition is fair; and (iv) the Board's unanimous recommendation to DigitalGlobe stockholders to vote in favor of the Proposed Acquisition.

**The Registration Statement and the Proxy Statement Fail to Disclose the Individual Transaction Multiples for the Companies in Barclays'** *Selected Precedent Transaction Analysis*

52.    The Registration Statement and the Proxy Statement omit the individually observed transaction multiples for each of the companies in Barclays' *Selected Precedent Transaction Analysis*.  These multiples are material information for DigitalGlobe stockholders and their omission renders several sections of both the Registration Statement and the Proxy Statement materially misleading.

53.    The individually observed transaction multiples for each of the companies in Barclays' *Selected Precedent Transaction Analysis* are material.  Like pricing multiples, transaction multiples tend to be measurably lower for commercial satellite companies, like MDA, than for

- 15 -

satellite companies specializing in defense and security applications, like DigitalGlobe. By providing the data in a completely consolidated manner, the Registration Statement and the Proxy Statement fail to provide the information necessary for DigitalGlobe stockholders to determine which transaction multiple should apply to DigitalGlobe, meaning DigitalGlobe stockholders cannot effectively evaluate whether the multiples used by Barclays to value DigitalGlobe are appropriate or whether the merger consideration is fair.

54.    Moreover, certain companies in Barclay's *Selected Precedent Transaction Analysis* are certainly more comparable to DigitalGlobe than others, and it is vitally important for DigitalGlobe stockholders to know what multiples were paid for the most comparable companies. Without this information, DigitalGlobe stockholders cannot accurately assess whether the multiples used by Barclays to value DigitalGlobe are appropriate or whether the consideration offered by MDA in the Proposed Acquisition is fair.

55.    The Registration Statement's and the Proxy Statement's omission of the individually observed transaction multiples for each of the companies in Barclays' *Selected Precedent Transaction Analysis* renders several sections of the Registration Statement and the Proxy Statement materially misleading. For example, this omission renders Barclays' *Selected Precedent Transaction Analysis* itself materially misleading. In addition, this omission renders conclusions based, at least in part, on Barclays' *Selected Precedent Transaction Analysis* materially misleading, including, *inter alia*: (i) Barclays' conclusion that the merger consideration is fair; (ii) the Board's conclusion that the Proposed Acquisition is fair; and (iii) the Board's unanimous recommendation to DigitalGlobe stockholders to vote in favor of the Proposed Acquisition.

**The Registration Statement and the Proxy Statement Omit Material
Information from DigitalGlobe's Financial Projections**

56.     The Registration Statement and the Proxy Statement omit several pieces of material
data from the financial projections provided by DigitalGlobe management to MDA and relied on by
PJT and Barclays to generate their fairness analyses.  These omissions render several sections of
each document materially misleading.

57.     The material data from DigitalGlobe's financial projections that is omitted from the
Registration Statement and the Proxy Statement includes, but is not limited to: (i) revenue by major
business unit, segment, and WorldView-4 and The Radiant Group, Inc. ("Radiant") individually; (ii)
cost of revenue and SG&A expenses by major business unit, segment, and WorldView-4 and
Radiant individually; (iii) EBITDA by major business unit, segment, and WorldView-4 and Radiant
individually; (iv) depreciation and amortization by major business unit, segment, and WorldView-4
and Radiant individually; (v) capital expenditures by major business unit, segment, and WorldView-
4 and Radiant individually; (vi) taxes; (vii) changes in net working capital; (viii) deferred revenue;
(ix) deferred contract costs and other operating activities; (x) any adjustments to unlevered free cash
flow not disclosed in the Registration Statement and/or Proxy Statement; and (xi) actual unlevered
free cash flow amounts used in PJT's and Barclays' discounted cash flow ("DCF") analyses, if
different from those presented in the Registration Statement or the Proxy Statement.

58.     The data omitted from DigitalGlobe's financial projections is material for several
reasons.  First, the omitted data is material because DigitalGlobe stockholders cannot effectively
analyze the future prospects of the Company, the valuation analyses performed by PJT and Barclays,
or the adequacy of the merger consideration without this information.

59.     In addition, the omitted data is material because it is necessary to illustrate how Company management factored DigitalGlobe's acquisition of Radiant into the Company's financial projections.  DigitalGlobe acquired Radiant on November 16, 2016 for $140 million, and, as DigitalGlobe explained, the acquisition was projected to positively impact DigitalGlobe's cost structure and growth opportunities.  Adding to the materiality of this omitted data, DigitalGlobe stockholders have little to no ability to quantify the impact of the Radiant acquisition themselves because it occurred much too recently to meaningfully impact DigitalGlobe's publicly disclosed financial results.

60.     Several prominent Wall Street firms agreed that DigitalGlobe's acquisition of Radiant would positively impact DigitalGlobe's cost structure and growth opportunities.  For example, Jefferies Group LLC stated on October 11, 2016 that "[w]e believe the market for the company's services is substantial and the combination [of Radiant and DigitalGlobe] creates a business with meaningful opportunity to grow share and to grow the market."  Likewise, on October 12, 2016, Dougherty & Company LLC stated that "[a]s [DigitalGlobe] expands Radiant's expertise and technologies to DAP/Commercial customers, we expect revenue synergies beyond the proforma revenues announced by management."

61.     Finally, the data omitted from DigitalGlobe's financial projections is material because it appears to include information that significantly impacted the valuation analyses performed by PJT and Barclays in both the Registration Statement and the Proxy Statement.  Using the data disclosed in the Registration Statement and the Proxy Statement, plaintiff could not replicate any of the three DCF analyses presented by PJT for DigitalGlobe or the DCF analysis presented by Barclays for DigitalGlobe.  Thus, there is almost certainly undisclosed data from DigitalGlobe's financial

projections that is significantly impacting PJT's and Barclays' valuation analyses for DigitalGlobe, particularly their DCF analyses. Without this information, DigitalGlobe stockholders cannot fully analyze or comprehend the valuation analyses provided by PJT and Barclays, or assess the accuracy of the conclusions derived from these valuation analyses.

62. The material data omitted from DigitalGlobe's projections renders several portions of the Registration Statement and the Proxy Statement materially misleading, including, *inter alia*: (i) the valuation analyses performed by PJT, particularly its *Discounted Cash Flow Analysis – DigitalGlobe*; (ii) the valuation analyses performed by Barclays, particularly its *Discounted Cash Flow Analysis – DigitalGlobe*; (iii) PJT's conclusion that the merger consideration is fair; (iv) Barclays' conclusion that the merger consideration is fair; (v) the Board's conclusion that the Proposed Acquisition is fair; and (vi) the Board's unanimous recommendation to DigitalGlobe stockholders to vote in favor of the Proposed Acquisition.

**The Registration Statement and the Proxy Statement Omit Material
Information from MDA's Financial Projections and DigitalGlobe's Revised MDA
Financial Projections**

63. The Registration Statement and the Proxy Statement fail to disclose material data from the financial projections provided by MDA management to DigitalGlobe and DigitalGlobe's revised MDA financial projections, which were used by PJT and Barclays for purposes of rendering their fairness analyses. These omissions render several portions of both the Registration Statement and the Proxy Statement materially misleading.

64. The material data omitted from MDA's financial projections and DigitalGlobe's revised MDA financial projections includes, but is not limited to: (i) depreciation and amortization; (ii) taxes; (iii) changes in net working capital; (iv) enterprise improvement costs; (v) foreign

exchange loss; (vi) executive termination settlement costs; (vii) any adjustments to unlevered free

cash flow not disclosed in the Registration Statement and/or the Proxy Statement; and (viii) actual

unlevered free cash flow amounts used in Barclays' DCF analyses for MDA, if different from those

already presented.

66.    The data omitted from MDA's financial projections and DigitalGlobe's revised MDA

financial projections is material for several reasons.  First, the omitted data is material because

DigitalGlobe stockholders cannot effectively analyze the future prospects of MDA or assess the

valuation analyses performed by PJT and Barclays for MDA without this information.

Consequently, DigitalGlobe stockholders cannot assess the accuracy of the conclusions derived from

PJT's and Barclays' valuation analyses, such as the Board's conclusion that the Proposed

Acquisition is fair.

66.    In addition, the data omitted from MDA's financial projections and DigitalGlobe's

revised MDA financial projections is material because it appears to include information that

significantly impacted the valuation analyses performed by Barclays for MDA.  Using the

information disclosed, plaintiff could not replicate Barclays' DCF analyses for MDA that relied on

either MDA's financial projections or DigitalGlobe's revised MDA financial projections.  Thus,

there is almost certainly undisclosed data from both sets of projections that is significantly impacting

these DCF analyses.  Without this information, DigitalGlobe stockholders cannot analyze or

comprehend Barclays' DCF analyses for MDA in the Registration Statement and/or the Proxy

Statement.

67.    The data omitted from MDA's financial projections and DigitalGlobe's revised MDA

financial projections renders several portions of both the Registration Statement and the Proxy

Statement materially misleading, including, but not limited to: (i) the valuation analyses performed by PJT; (ii) the valuation analyses performed by Barclays, particularly its *Discounted Cash Flow Analysis – MDA*; (iii) PJT's conclusion that the merger consideration is fair; (iv) Barclays' conclusion that the merger consideration is fair; (v) the Board's conclusion that the Proposed Acquisition is fair; and (vi) the Board's unanimous recommendation to DigitalGlobe stockholders to vote in favor of the Proposed Acquisition.

**Defendants Had Direct Control Over the Content of the Registration Statement and the Proxy Statement**

68.     All defendants had control over the information they proffered to DigitalGlobe stockholders in both the Registration Statement and the Proxy Statement.  For example, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the content and dissemination of the Registration Statement and the Proxy Statement by virtue of their positions as officers and/or directors of DigitalGlobe, their participation in and/or awareness of DigitalGlobe's operations, their intimate knowledge of the false statements contained in these documents, and the powers granted to them by the Merger Agreement.  Thus, the Individual Defendants were responsible for the false and misleading statements in both the Registration Statement and the Proxy Statement identified above.

69.     MDA, like the Individual Defendants, had the power to influence and control and did influence and control, directly or indirectly, the content of the Registration Statement and the Proxy Statement by virtue of its participation in drafting and filing these documents, its intimate knowledge of the false statements contained in these documents, and the powers granted to it under the Merger Agreement.  Thus, MDA was responsible for the false and misleading statements in the Registration Statement and the Proxy Statement identified above.  As stated in §5.7 of the Merger Agreement:

(a)     The Company and Parent [MDA] shall cooperate with one another (i) in connection with the preparation of the Proxy Statement, the Parent Circular and the Form F-4, (ii) in determining whether any action by or in respect of, or filing with, any Governmental Entity is required, or any consents, approvals or waivers are required to be obtained from Parties to any material contracts, in connection with the consummation of the transactions contemplated by this Agreement and (iii) in seeking any such actions, consents, approvals or waivers or making any such filings, furnishing information required in connection therewith or with the Proxy Statement, the Parent Circular, the Form F-4 and seeking timely to obtain any such actions, consents, approvals or waivers.  The Proxy Statement will be included as part of the Form F-4.  Each of Parent and the Company shall use their respective reasonable best efforts to file with the SEC the Form F-4 as soon as practicable following the date hereof.  Each of the Company and Parent shall use reasonable best efforts to have the Proxy Statement cleared by the SEC and the Form F-4 declared effective by the SEC as promptly as practicable and to keep the Form F-4 effective as long as is necessary to consummate the Merger and the transactions contemplated by this Agreement.  The Company and Parent shall, as promptly as practicable after receipt thereof, provide the other Party copies of any written comments and advise the other Party of any oral comments with respect to the Proxy Statement, the Parent Circular and the Form F-4 received by any Governmental Entity.  The Parties shall cooperate and provide the other with a reasonable opportunity to review and comment on any amendment or supplement to the Proxy Statement, the Parent Circular or the Form F-4 prior to filing such documents with any Governmental Entity, and will provide each other with a copy of all such filings made with any Governmental Entity.

(b)     The information supplied by the Company, Parent and Merger Sub or any of their respective affiliates for inclusion in the Form F-4 shall not, at the time the Form F-4 is declared effective, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein, in light of the circumstances under which they were made, or necessary in order to make the statements therein not misleading.  The information supplied by the Company, Parent and Merger Sub or any of their respective affiliates for inclusion in the Proxy Statement shall not, at the date the Proxy Statement (or any supplement thereto) is first mailed to the stockholders of the Company or at the time of the Company Stockholder Meeting contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they are made, not misleading.  The information supplied by the Company, Parent and Merger Sub or any of their respective affiliates for inclusion in the Parent Circular shall not, at the date the Parent Circular (or any supplement thereto) is first mailed to the shareholders of Parent or at the time of the Parent Shareholder Meeting contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they are made, not misleading.  If at any time prior to the

Effective Time, any event or circumstance relating to the Company, Parent and Merger Sub or any of their respective affiliates, or its or their respective officers or directors, should be discovered by the Company, Parent or Merger Sub that should be set forth in an amendment to the Form F-4 or a supplement to the Proxy Statement or Parent Circular, the Company, Parent or Merger Sub shall promptly inform the other Parties hereto thereof in writing. All documents that the Company or Parent is responsible for filing with the SEC or the Canadian Securities Regulatory Authorities in connection with the transactions contemplated herein will comply as to form in all material respects with applicable requirements of the Securities Act and the rules and regulations thereunder, the Exchange Act and the rules and regulations thereunder and the Canadian Securities Laws and the rules and regulations thereunder.

## COUNT I

### For Violations of §14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and DigitalGlobe

70.    Plaintiff repeats and realleges each allegation set forth herein.

71.    The Individual Defendants and DigitalGlobe filed with the SEC and/or disseminated to DigitalGlobe stockholders the Registration Statement and the Proxy Statement, both of which are materially false and misleading. The Registration Statement and the Proxy Statement failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

72.    The Registration Statement and the Proxy Statement were prepared, reviewed and/or disseminated by the Individual Defendants and DigitalGlobe. The Registration Statement and the Proxy Statement omit and/or misrepresent material information regarding DigitalGlobe's and MDA's intrinsic value.

73.    In the Registration Statement and the Proxy Statement, the Individual Defendants and DigitalGlobe made untrue statements of material fact and omitted material facts necessary to make the statements made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder. By virtue of their positions, the Individual Defendants and DigitalGlobe

were aware of this information and of their duty to disclose this information in the Registration
Statement and the Proxy Statement.

74.    The Individual Defendants and DigitalGlobe were at least negligent in filing the
Registration Statement and/or the Proxy Statement with these materially false and misleading
statements and omissions.

75.    The false and misleading statements and omissions in the Registration Statement and
the Proxy Statement are material in that a reasonable investor would consider them important in
deciding how to vote on the Proposed Acquisition.  In addition, a reasonable investor would view a
full and accurate disclosure as significantly altering the "total mix" of information made available in
the Registration Statement, the Proxy Statement, and other information reasonably available to
stockholders.

76.    By reason of the foregoing, the Individual Defendants and DigitalGlobe have violated
§14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.  As a result of these
violations, plaintiff and all other Class members will be harmed.

### COUNT II

**For Violation of §20(a) of the 1934 Act**
**Against the Individual Defendants and MDA**

77.    Plaintiff repeats and realleges each allegation set forth herein.

78.    The Individual Defendants acted as controlling persons of DigitalGlobe within the
meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or
directors of DigitalGlobe, their participation in and/or awareness of the Company's operations, and
their intimate knowledge of the false statements contained in the Registration Statement and the
Proxy Statement, the Individual Defendants had the power to influence and control and did influence

and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

79.    In particular, each of the Individual Defendants had direct and/or supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement and the Proxy Statement contain the recommendation of each of the Individual Defendants to approve the Proposed Acquisition. They were thus directly involved in the making of these documents.

80.    MDA acted as a controlling person of DigitalGlobe and the Individual Defendants within the meaning of §20(a) of the 1934 Act as alleged herein.  Pursuant to the Merger Agreement, MDA possessed control over DigitalGlobe and the Individual Defendants.

81.    In particular, MDA had direct supervisory control over DigitalGlobe pursuant to the Merger Agreement, as MDA was, and still is, able to restrict the conduct of DigitalGlobe's business prior to the consummation of the Proposed Acquisition, subject to specific limitations, which may delay or prevent DigitalGlobe from undertaking business opportunities that may arise before the completion of the merger and that, absent the Merger Agreement, DigitalGlobe might have pursued. Among other things, MDA had direct supervisory control over the preparation and dissemination of the Registration Statement and the Proxy Statement, including the composition of each document and the information DigitalGlobe and the Individual Defendants disclosed therein, as well as the information DigitalGlobe and the Individual Defendants omitted or misrepresented in the Registration Statement and/or the Proxy Statement.

82.     Each of the Individual Defendants and MDA was provided with or had unlimited access to copies of the Registration Statement and the Proxy Statement prior to and/or shortly after these documents were issued and had the ability to prevent the issuance of the false and misleading statements contained therein or cause the statements to be corrected.

83.     In addition, as the Registration Statement and the Proxy Statement set forth, the Individual Defendants and MDA were involved in negotiating, reviewing and/or approving the Proposed Acquisition.  The Registration Statement and the Proxy Statement purport to describe the various issues and information that the Individual Defendants and MDA reviewed and considered – descriptions that had input from the Individual Defendants and MDA.

84.     By virtue of the foregoing, the Individual Defendants and MDA have violated §20(a) of the 1934 Act.  The Individual Defendants and MDA had the ability to exercise control over and did control a person or persons who violated §14(a) of the 1934 Act and SEC Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the Individual Defendants and MDA are liable pursuant to §20(a) of the 1934 Act.  As a direct and proximate result of these defendants' conduct, plaintiff and all other Class members will be harmed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, or, in the alternative, monetary relief, in plaintiff's favor and in favor of the Class and against defendants, as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Declaring that defendants violated the federal securities laws as set forth herein by disseminating and filing the Registration Statement and/or the Proxy Statement in connection with the Proposed Acquisition, both of which contain materially false and misleading statements about the Proposed Acquisition;

C.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until they comply with their duties under §§14(a) and 20(a) of the 1934 Act to provide stockholders with all material information about the actual intrinsic value of the Company and MDA;

D.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof;

E.      If enjoining the Proposed Acquisition and/or rescinding the Merger Agreement is not feasible, awarding rescissory damages in favor of plaintiff and the Class;

F.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

- 27 -

DATED: July 12, 2017                    EVANS & MCFARLAND, LLC


                                        *s/M. Gabriel McFarland*
                                        M. GABRIEL MCFARLAND
                                        910 13th Street, Suite 200
                                        Golden, CO 80401
                                        Telephone: 303/279-8300
                                        303/277-1620 (fax)
                                        gmcfarland@emlawyers.com

                                        ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                        DAVID T. WISSBROECKER
                                        655 West Broadway, Suite 1900
                                        San Diego, CA 92101-8498
                                        Telephone: 619/231-1058
                                        619/231-7423 (fax)
                                        dwissbroecker@rgrdlaw.com

                                        Attorneys for Plaintiff

**Plaintiff's address:**
4623 Hartel Ave.
Philadelphia, PA 19136
215-331-5907

I:\Admin\CptDraft\Deal\CPT DigitalGlobe.docx